## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Criminal No. 1:18-CR-48** |
| | : | |
| **v.** | : | **(Judge Wilson)** |
| | : | |
| **CHARLES EUGENE NOLDEN** | : | **Electronically Filed** |

---

## DEFENDANT'S SENTENCING MEMORANDUM

---

### I.    INTRODUCTION

Mr. Nolden pled guilty to a two-count Superseding Information charging him with being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) (Count 1) and with possessing a firearm in furtherance of drug trafficking in violation of 18 U.S.C. § 924(c) (Count 2).  Mr. Nolden entered his guilty plea pursuant to a Federal Rule 11(c)(1)(C) Plea Agreement, whereby the collective term of imprisonment would be 14 years, a fine of $500, a term of supervised release of 3 years, and a $200 special assessment.  (Plea Agmt. ¶ 15.)  This Plea Agreement is for Case No. 1:18-cr-48 (the "Instant Case").

In addition, Mr. Nolden is facing a supervised release revocation in Case No. 1:cr-09-093-01 (the "Revocation Case").  The Guidelines range for Mr. Nolden's Revocation Case is 24 months.  If the Court decides to accept the Rule 11(c)(1)(C)

Agreement, the primary question for the Court at sentencing will be whether a portion of Mr. Nolden's sentence in the Instant Case should run concurrently or consecutively with his sentence in the Revocation Case.

Mr. Nolden respectfully suggests that a sentence of 14 years is a significant punishment and that no additional prison time is necessary to accomplish the objectives set forth in 18 U.S.C. § 3553(a)(2). Accordingly, Mr. Nolden respectfully requests that the Court enter a sentence of 14 years in the Instant Case and that any sentence imposed in the Revocation Case runs concurrently with the Instant Case.

## II.     FACTUAL BACKGROUND

This case is based upon two controlled buys that led to a search warrant for Mr. Nolden's home. On August 23, 2017, officers executed a search warrant on Mr. Nolden's home and also searched his vehicle. (PSR ¶ 8.) Altogether, officers recovered 14.69 grams of heroin during the search. (PSR ¶¶ 8, 10.) Mr. Nolden claimed responsibility for the drugs. Mr. Nolden also admitted to the officers that he had a firearm in the house and told them where it was located. Officers subsequently searched the location where Mr. Nolden said the firearm was hidden, and found an AR-15 rifle under Mr. Nolden's bed. The rifle was not loaded, the magazine was found separately from the firearm. (PSR ¶ 9.)

## III.   CALCULATION OF THE GUIDELINES RANGE

The PSR contends that Mr. Nolden is a Career Offender and the Guidelines range is 262-327 months.  (PSR ¶ 70.)  Mr. Nolden objects to his categorization as a Career Offender because, as set forth below, he does not have two prior predicate offenses.  (See PSR ¶¶ 27, 28, 33, 70.)  For the same reasons, Mr. Nolden objects to the Base Offense Level for Count 1 (18 U.S.C. § 922(g)) set forth in PSR ¶ 18.

In addition, Mr. Nolden objects to Paragraphs 7 and 34, but these objections do not affect the Guidelines calculation.

### A. Objections to the Guidelines calculation

The PSR relies upon the following purported Career Offender predicate convictions:  (1) a December 12, 2000 conviction for possession with intent to deliver (the "2000 Drug Case") (PSR ¶ 33); and (2) a February 21, 2001 conviction for conspiracy to commit third degree murder (the "2001 Conspiracy Case"), where Mr. Nolden was the driver of a vehicle and one of the passengers participated in the shooting (PSR ¶ 34).  Neither conviction is a valid predicate and present separate and independent reasons for finding that Mr. Nolden is not a Career Offender.

At the July 26, 2021 presentence conference the Government stated that it is not going to contend at sentencing that Mr. Nolden is a Career Offender.  Mr. Nolden

3

does not seek to prolong a moot issue, but he presents these arguments out of an abundance of caution.

### 1. Mr. Nolden's drug conviction from the 2000 Drug Case is not a valid Career Offender predicate.

The 2000 Drug Case (PSR ¶ 33) is not a valid Career Offender predicate because it does not fall within the applicable time period. USSG § 4A1.2(e). A conviction must be counted pursuant to USSG § 4A1.1(a), (b) or (c) to be a valid Career Offender predicate. USSG § 4B1.2(c). For a sentence of imprisonment that exceeds 1 year and 1 month to fall within the applicable time period to be counted under USSG § 4A1.1(a), (b) or (c), the defendant must have been incarcerated on that charge within 15 years of the commencement of the instant offense. USSG § 4A1.2(e)(1).

Mr. Nolden received a sentence of 1-2 years in the 2000 Drug Case. (PSR § 33.) The offense conduct in the Instant Case occurred on August 22 and 23, 2017. (PSR ¶ 7.) Therefore, for the 2000 Drug Case to fall within the applicable time period, Mr. Nolden must have been serving a term of incarceration for it within 15 years of August 22, 2017 (i.e., on or after August 22, 2002).

In the 2000 Drug Case, Mr. Nolden was initially arrested on June 8, 2000. (PSR ¶ 33.) Mr. Nolden was released and re-arrested on August 8, 2000. (PSR § 34.) On December 12, 2000, Mr. Nolden was sentenced in the 2000 Drug Case.

(PSR ¶ 33.)  Mr. Nolden's guilty plea was pursuant to a negotiated plea agreement (as the Court is aware, this is analogous to a Rule 11(c)(1)(C) agreement in federal court).  (PSR ¶ 33.)  Mr. Nolden's guilty plea colloquy is attached as Exhibit A.  The guilty plea colloquy states that it is a material term of his guilty plea that he would receive a sentence of 1-2 years, with "credit for time served."  (Ex. A, p. 9.)  The York County Court of Common Pleas sentenced Mr. Nolden consistent with his plea agreement and imposed a sentence of 1-2 years.  The transcript from the guilty plea and sentencing is attached as Exhibit B.  The Court ordered, "We will give him credit for time served."  (Exhibit B at p. 6.)

Accordingly, the Court ordered that Mr. Nolden receive credit for time served, which is consistent with the material terms of his negotiated plea agreement; Mr. Nolden should have received credit from August 8, 2000.  This means that his 1-2 year sentence would have expired, at the latest, on August 8, 2002.  Mr. Nolden's 2000 Drug Case does not fall within the applicable time period to be counted under USSG § 4A1.1.  USSG § 4A1.2(e)(1).

The PSR Addendum contends that this time should not have been credited to the 2000 Drug Case because he was in custody on the 2001 Conspiracy Case.  (Doc. 110 at p. 2.)  This is inconsistent with the plea colloquy and the sentencing judge's order, because both expressly state that Mr. Nolden is to get credit for the time he had served; Mr. Nolden did not plead guilty in the 2001 Conspiracy Case until over

2 months later in February 2001. (PSR ¶ 34.) Therefore, when Mr. Nolden and the Commonwealth expressly made credit for time served part of the plea agreement in the 2000 Drug Case, and the Court specifically ordered credit for time served, the Court, Commonwealth and Mr. Nolden must have been referencing Mr. Nolden's time in prison from August 8, 2000 – December 12, 2000. Otherwise, there would be no jail credit to give. The statement identified by the Probation Office on Mr. Nolden's commitment form is clearly a typo. In any event, unlike the Guilty Plea Colloquy, the commitment form is not a *Shepard* document. It should receive less credibility than the Guilty Plea Colloquy and the sentencing transcript, as those documents have the judge's words and the parties' signatures to confirm their intent and the understanding of all involved.

### 2. Mr. Nolden is not a Career Offender because his conviction for the 2001 Conspiracy Case is not a valid predicate offense.

Mr. Nolden is not a Career Offender for the separate and independent reason that his 2001 Conspiracy Case is not a violent felony under USSG § 4B1.2(a). Prior to *United States v. Nasir*, 382 F.3d 144 (3d Cir. 2020), Application Note 1 to USSG § 4B1.2 was commonly relied upon to find that a conspiracy conviction for a controlled substance offense or crime of violence could serve as a Career Offender predicate. Application Note 1 states, "For purposes of this guideline – 'Crime of violence' and 'controlled substance offense' include the offenses of aiding and abetting, conspiring, and attempting to commit such offenses." In *Nasir*, the Third

6

Circuit explained that the Application Note improperly expanded the definitions set forth in USSG § 4B1.2.  *Nasir* at 158-159.  While *Nasir* dealt with a controlled substance offense, Application Note 1 is the same for crimes of violence and controlled substance offenses, and the same logic should apply to a crime of violence.[1]

The Addendum argues that Pennsylvania's conspiracy statute is divisible and therefore the *Nasir* analysis does not apply.  (Doc. 110 at p. 1-2.)  Whether Pennsylvania's conspiracy statute is divisible is irrelevant to *Nasir*'s holding. *Nasir*'s instruction with respect to Application Note 1 remains the same.  Mr. Nolden's 2001 Conspiracy Conviction is not a valid Career Offender predicate.

**** 

If Mr. Nolden's objections are sustained, he would not be a Career Offender for purposes of Count 2, his Criminal History Score would be 3 points lower that what is reflected in the PSR, and he would not have predicate convictions for

---

[1] *Nasir* does state that unlike controlled substance offenses, certain inchoate crimes are included in the term "crime of violence."  *Id*. at 159.  USSG § 4B1.2(a)(1) lists "attempt" as an inchoate crime that is included in the definition of a crime of violence.  USSG § 4B1.2(a)(1).  Notably, "conspiracy" is not listed in USSG § 4B1.2(a)(1).  *Nasir* explained that such omissions plainly reflect the statutory intent to exclude the unstated offense, here conspiracy.  *Nasir*, 982 F.3d at 159 ("As a familiar canon of construction states, expression *unius est exclusion alterius*: the expression of one thing is the exclusion of the other").

purposes of USSG § 2K2.1.  The Guidelines calculation for Count 1 would be as follows:

<u>Offense Level</u>

| | | |
|---|---|---|
| Base Offense Level: | 20 | USSG § 2K2.1(a)(4)(B) |
| Acceptance: | <u>-3</u> | USSG § 3E1.1 |
| Total Offense Level: | $17^2$ | |

<u>Criminal History Category</u>

| | | |
|---|---|---|
| Points: | 3 | PSR ¶ 34 |
| | +3 | PSR ¶ 35 |
| | +1 | PSR ¶ 36 |
| | <u>+2</u> | PSR ¶ 38 (on supervised release) |
| Total CH Points: | 9 | Criminal History Category IV |

Total Offense Level 17 and Criminal History Category IV corresponds to 37-46 months.[3]

---

[2] The upward adjustment for possession of a firearm in connection with another offense (USSG § 2K2.1(b)(6)) would not apply because Mr. Nolden is also being sentenced for Count 2, violation of 18 U.S.C. § 924(c).  Imposing the specific offense characteristic at USSG § 2K2.1(b)(6) would be impermissible double counting. USSG § 2K2.4 n. 4; *see also United States v. Smith*, 196 F.3d 676, 682 (6th Cir. 1999).

[3] The Addendum purports to use USSG § 2D1.1 This would appear to provide a lower Total Offense Level and therefore would not be applied pursuant to the Cross Reference at USSG § 2K2.1(c)(1).  Mr. Nolden calculates his Total Offense Level under USSG § 2D1.1 as follows:  Base Offense Level 14 (14.69 grams of heroin,

In addition, Mr. Nolden's sentence on Count 1 must be consecutive to his sentence on Count 2. Adding 60 months to the range above, the resulting range is 97-106 months.

## B. Objections that do not affect the Guidelines

Mr. Nolden objects to PSR ¶ 7 because the Government's information is clear that Mr. Nolden was not involved in this controlled purchase. The Government's information indicates that the August 23 sale did not involve Mr. Nolden. Law enforcement purportedly saw Mr. Nolden and identified him on August 22. (Search Warrant Affidavit, USA 86, attached as Exhibit C.) The very next day, law enforcement conducted a controlled purchase and apparently specifically found that it did not involve Mr. Nolden. (Exhibit C, USA 87 (confirming that the Aug. 23 controlled purchase involved an "unidentified black male)".)

Mr. Nolden also objects to the last paragraph of numbered paragraph 34. These statements are unnecessary for the PSR. Further, Mr. Nolden did not admit during his change of plea that the AR-15 had been modified to fire on fully automatic, as described in PSR ¶ 9. Mr. Nolden respectfully requests that this sentence be removed from PSR ¶ 9.

---

USSG § 2D1.1(c)(13)) minus 2 (Acceptance, USSG § 3E1.1) = Total Offense Level 12.

These objections do not impact the Guidelines.

**C. Mr. Nolden's supervised release revocation (1:CR-09-093-01)**

On January 27, 2010, Mr. Nolden was sentenced to a term of imprisonment of 77 months and 3 years of supervised release in the Revocation Case. (PSR ¶ 35.) Mr. Nolden's term of supervised release commenced on August 28, 2015. (Id.) Mr. Nolden's supervised release is being revoked simultaneously with this sentencing.

Mr. Nolden's offense of conviction in the Revocation Case was for violation of 18 U.S.C. § 922(g)(1). The statutory maximum term for revocation is based upon the grading of the felony that was the offense of conviction in the Revocation Case. Here, in the Revocation Case Mr. Nolden was convicted of violating 18 U.S.C. 922(g)(1). (See Case No. 1:CR-09-093-01 at Doc. 33.) The statutory maximum term of imprisonment for this offense is 10 years, making it a Class C felony. 18 U.S.C. § 922(g); 18 U.S.C. § 924(a)(2). Therefore, the statutory maximum term for revocation of Mr. Nolden's supervised release is 2 years. 18 U.S.C. § 3583(e)(3).

Although counsel does not have the benefit of the PSR from the Revocation Case, it appears that Mr. Nolden had 9 criminal history points at the time of his sentencing in the Revocation Case. (See PSR ¶¶ 32-34.) The instant offense of revocation is a Grade A violation. Therefore, the Guidelines range for revocation is

24-30 months.  USSG § 7B1.4(a)(1).  Accordingly, 24 months is both the minimum and maximum Guidelines range for revocation.  USSG § 7B1.4(b)(1).

Mr. Nolden concedes that the Guidelines recommend that a sentence for revocation of supervised release run consecutively to the sentence in the Instant Case.  USSG § 7B1.3(f).  However, the Court ultimately has the discretion to run Mr. Nolden's sentence on the Instant Case concurrently with his sentence in the Revocation Case as well as his corresponding state court charges and revocation. (PSR ¶ 72.)  Based on the § 3553(a) factors, as set forth below, Mr. Nolden respectfully submits that a concurrent sentence would be appropriate here.

## IV.   SENTENCE PURSUANT TO 18 U.S.C. § 3553(a)

Mr. Nolden respectfully suggests that a sentence of 14 years (i.e., 168 months) would be sufficient, but not greater than necessary, to achieve the purposes set forth in 18 U.S.C. § 3553(a)(2).  This could be achieved as follows: in the Instant Case, 108 months on on Count 1 (felon in possession of firearm) run consecutively with 60 months on Count 2 (the 924(c) count), and a sentence of 0 months in the Revocation Case, or alternatively, a sentence of up to 24 months in the Revocation Case run concurrently with his sentence in Count 1 of the Instant Case.

Essentially, Mr. Nolden contends that a sentence of 14 years is adequate punishment and no additional sentence is necessary.

**A. Factor 1:      The nature and circumstances of the offense and the history and characteristics of Mr. Nolden.**

Mr. Nolden's offense is serious.  It deserves, and will receive, serious punishment.  Notably, there is no allegation that Mr. Nolden carried or displayed a firearm in this offense, engaged in violent conduct, or made any threats of violence. Rather, the unloaded firearm[4] was hidden in a bedroom and pursuant to the police report from the search warrant execution, it was kept for personal protection purposes.  Mr. Nolden's offense in this case is a nonviolent offense.

Mr. Nolden's personal history and characteristics weigh in favor of the sentence he is seeking.  While Mr. Nolden did sell drugs to make additional money, Mr. Nolden's life was composed of so much more.  In particular, he was a dedicated husband and father.  Mr. Nolden was very involved in his son's lives, particularly his oldest son.  Mr. Nolden coached his son's baseball team and his youngest son was a constant companion.  Moreover, this experience has shown Mr. Nolden that he can lose his family if he continues down this path.  Recent events in Mr. Nolden's life have further communicated to him that time is precious.  Mr. Nolden was very close with his father and his niece.  They both passed away while Mr. Nolden was

---

[4] The report from the execution of the search warrant states that the magazine was found in a location separate from the rifle.

in pretrial detention in this case.  These events crushed Mr. Nolden emotionally, particularly that he was unable to say goodbye to his father in person.

Meanwhile, Mr. Nolden has experienced significant health issues that have driven this issue home.  In August 2020, he was rushed to the hospital, where he was later diagnosed with atrial fibrillation.  (PSR ¶ 54.)  Further, Mr. Nolden contracted COVID.  Mr. Nolden continues to experience health issues, and the atrial fibrillation diagnosis is a lifelong condition that impairs Mr. Nolden's quality of life.  Mr. Nolden also recently learned that he has a nodule in his left lung.  (PSR ¶ 55.)  It is possible that this is a serious health issue.  His doctors continue to examine it.

To address the elephant in the room, Mr. Nolden did plead guilty in the 2001 Conspiracy Case.  Mr. Nolden was the driver of a vehicle, and one of the passengers shot and killed another individual.  (PSR ¶ 34.)  More specifically, shots were exchanged by both the victim and the shooter in Mr. Nolden's car.  Mr. Nolden realizes that he could have made efforts to avoid the situation, but he did not.  He was 20 years old and made poor choices.  (PSR ¶ 34.)  He was running with a bad crowd and using drugs, and in that instant, instead of driving away, he did not extricate himself from the situation.  (PSR ¶¶ 57-59.)  The effects of that tragic evening have haunted Mr. Nolden emotionally since then and the circumstances have led to Mr. Nolden making additional mistakes that resulted in the charges in this case.  (See PSR ¶ 34.)

The defense anticipates that the Government's arguments for a consecutive sentence will place great weight on the 2001 Conspiracy Case.  However, Mr. Nolden is not being sentenced in the 2001 Conspiracy Case.  He has already received, and served, his sentence in that case.  Mr. Nolden is now being sentenced for possessing with intent to distribute 14 grams of heroin and an unloaded firearm.

**B. Factor 2:     The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed treatment or training.**

While the instant offense is serious, it is a nonviolent offense, and 14 years is a very long time. To put 14 years in perspective, 14 years ago most people used "flip phones" and smartphones were uncommon, with the first Apple iPhone being released almost exactly 14 years ago (release date June 29, 2007).  (Cohen, Peter, "Macworld Expo Keynote Live Update:  Introducing the iPhone," *Macworld* (Jan. 9, 2007).   George W. Bush was President (then-Sen. Obama announced his candidacy for President in February 2007).  *The Big Bang Theory* debuted on television in 2007 (generally via cable tv and without a streaming service).  Last, 14 years ago the Great Recession had not yet begun.  In short, 14 years ago the world was a different place.

While this review of recent history was admittedly interesting to compile, its true purpose was to put into perspective how long 14 years is. Perhaps attorneys are prone to getting caught up in Guideline ranges and statutory factors and miss the practical view of just how much time is contemplated in these numbers. Mr. Nolden's youngest child will grow up during his 14 year sentence. His oldest child, now in high school, will likely be off starting a family of his own by the time Mr. Nolden is released on this sentence. His father has already passed away, and there is a significant chance that his mother will not live to see Mr. Nolden outside of prison. Fourteen years is a very long time. Fourteen years is more than enough to punish (coincidentally) 14 grams of heroin and an unloaded firearm hidden under a bed. (See PSR ¶¶ 8-10.)

The defense anticipates that the Government will contend that the sentence should run consecutively with the Revocation Case because Mr. Nolden was initially charged here with a 30-year mandatory minimum sentence and contends that Mr. Nolden has already received a significant benefit by pleading guilty to a lesser charge. While this is accurate, it does not tell the full story. Mr. Nolden entered into a charge bargain. Mr. Nolden raised multiple meritorious suppression issues that posed serious challenges to the Government's case. (Docs. 75-76.) By entering into the Plea Agreement, Mr. Nolden exchanged his suppression issues for a charge that carried a sentence below the mandatory minimum. Mr. Nolden's charge bargain

was a risk mitigation measure by both sides – Mr. Nolden mitigated the risk that he loses the suppression motion and trial and receives a sentence in excess of 30 years; the Government mitigated the risk that it would lose the suppression motion and its case would have effectively been dismissed as well as the risk that it could not prove Mr. Nolden's guilt beyond a reasonable doubt at trial.   Mr. Nolden's 14-year sentence should not be viewed as some generous break that he received from the Government.  Both sides obtained something of value in the Plea Agreement.  More importantly, such an argument from the Government is irrelevant.  The issue posed in § 3553(a))(2) is not whether Mr. Nolden received a "break" under the potential mandatory minimum sentence.  Rather, the question is whether a sentence in excess of 14 years is necessary to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and to provide the defendant with needed treatment or training.  There is simply no articulable reason why a sentence of 16 years would accomplish these objectives but a sentence of 14 years would not.

**C. Factor 3:        The kinds of sentences available.**

The sentence requested by Mr. Nolden is available under the Guidelines. (PSR ¶ 54.)

### D. Factor 4:      The Guidelines range.

Mr. Nolden's requested sentence of 14 years is within the Guidelines range. While it is accurate that the Guidelines recommends that the Revocation Case runs consecutively with the Instant Case, this view misses the forest for the trees. Fourteen years is substantially longer than the Guidelines range. Mr. Nolden's Guidelines range in the Instant Case, if his objections are sustained, is 97-106 months. The 14 year agreed sentence is over five years longer than the top of this Guidelines range. Accordingly, a partially concurrent sentence with the Revocation Case comes closer to achieving the recommended Guidelines range, calculated as follows:

Instant Case Guidelines Range:       97-106 months

Revocation Case Guidelines Range:   +24 months

Total =                               121-130 months

Therefore, the 14 year sentence alone is closer to the recommended total Guidelines range, although it still exceeds the top end by over three years. For these same reasons, Mr. Nolden's sentence in Count 1 of the Instant Case and the Revocation Case should run concurrently with any sentence that Mr. Nolden receives in his state court cases.

In addition, there is no guarantee that Mr. Nolden will get credit for the time he has served to date in pretrial detention. Mr. Nolden is being held in the York

County Prison in the state court analog to the Instant Case.  He also has a state revocation.  The defense hopes that York County will dismiss these charges in light of the significant sentence that Mr. Nolden receives in this case.  However, if it does not, then Mr. Nolden might not receive federal credit for the four years he has served to date, if that time is applied to a state case.  18 U.S.C. § 3585.  This is yet another reason for imposing concurrent sentences.

In short, the recommended Guidelines range supports running Mr. Nolden's Revocation Case concurrently with Count 1 in the Instant Case as well as any state court sentences that Mr. Nolden receives.


## V.    CONCLUSION

Mr. Nolden also respectfully requests that this Court enter the agreed sentence of 14 years in the Instant Case and run Count 1 of that sentence concurrently with the Revocation Case as well as any state sentence that Mr. Nolden receives.  Mr. Nolden also respectfully requests that the Court recommend placement in the Residential Drug Abuse Program should the Bureau of Prisons determine that he qualifies for it.

Respectfully submitted,

Date:  August 27, 2021                    /s/ M. Jason Asbell
                                          **M. Jason Asbell**
                                          2933 Lititz Pike
                                          P.O. Box 5349
                                          Lancaster, PA  17606
                                          PH: (717) 291- 1700 / FAX: (717) 291-5547
                                          jasbell@gkh.com
                                          Attorney for Defendant

## **CERTIFICATE OF WORD COUNT**

I certify that according to the word count feature in Microsoft Word, this Sentencing Memorandum is composed of 4,154 words, absent the caption, signature lines and certificates.

<u>/s/ Jason Asbell</u>
M. Jason Asbell

## <u>CERTIFICATE OF SERVICE</u>

I, M. Jason Asbell, do hereby certify that I have this 27th day of August, 2021, served the foregoing Sentencing Memorandum upon the following counsel of record via the ECF filing system:

> Scott Ford, Esq.
> Assistant United States Attorney
> Office of the U.S. Attorney
> Ronald Reagan Federal Building
> 228 Walnut Street
> Harrisburg, PA 17108

*/s/ M. Jason Asbell*
**M. Jason Asbell**
2933 Lititz Pike
P.O. Box 5349
Lancaster, PA 17606
PH: (717) 291- 1700 / FAX: (717) 291-5547
Email: *jasbell@gkh.com*
Attorney for Defendant

21